IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL TREGLIA,

    Plaintiff,                        No. 2: 09-cv-352 KJN P

    vs.

DIRECTOR OF CALIFORNIA
DEPARTMENT OF CORRECTIONS,
et al.,                                  <u>ORDER AND</u>

    Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>
_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding without counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion for partial summary judgment filed March 1, 2010, and plaintiff's motions to amend filed August 2, 2010, and September 13, 2010. For the following reasons, plaintiff's August 2, 2010 motion to amend is granted, and his September 13, 2010 motion to amend is denied. The undersigned recommends that plaintiff's motion for partial summary judgment be denied.

        On May 24, 2010, plaintiff filed a motion to augment the record. Plaintiff requests that the record by "augmented" with the exhibits attached to his motion. Plaintiff will be allowed to have those exhibits be considered part of the file. However, it is plaintiff's burden

to reference these exhibits when appropriate.

II. <u>Motions to Amend</u>

On February 6, 2009, plaintiff filed the original complaint against defendants Berkler, Fischer, Kisser, Ledesma, Villasenor, Virga, Walker, and the Secretary of the Department of Corrections and Rehabilitation ("CDCR"). The original complaint contained fifteen causes of action. On July 21, 2009, Magistrate Judge Mueller ordered service of claims one, two, three, four, five, six, eight, ten, eleven, thirteen, fourteen and fifteen. On November 13, 2009, defendants answered the complaint as to those claims.

On April 26, 2010, plaintiff filed a motion to voluntarily dismiss claims five, ten, eleven, fourteen and fifteen. On May 25, 2010, that motion was granted. On July 30, 2010, plaintiff filed a proposed amended complaint, and on August 2, 2010, plaintiff filed a motion to amend the complaint to dismiss claims one, two, three, six, and eight. The amended complaint contains two claims, designated as claims four and thirteen in the original complaint. On September 10, 2010, defendants filed a statement of non-opposition to plaintiff's motion to amend. On September 13, 2010, defendants filed an answer to the amended complaint. Good cause appearing, plaintiff's August 2, 2010 motion to amend is granted.

On September 13, 2010, plaintiff filed another motion to amend. This motion is not accompanied by a proposed amended complaint. Because plaintiff did not submit a proposed amended complaint, the court is unable to evaluate it. Accordingly, this motion for leave to amend is denied.

III. <u>Summary Judgment Motion</u>

   A. <u>Plaintiff's Claims</u>

The amended complaint contains two claims. First, plaintiff alleges that defendants retaliated against him for filing lawsuits and administrative appeals by sentencing him to a term in the Security Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP"). Second, plaintiff alleges that defendants violated his right to due process when they validated him

(confirmed designation) as an associate gang member and sentenced him to the SHU term.

Plaintiff's motion for summary judgment addresses his due process claim only. Plaintiff alleges that there was insufficient evidence to validate him as a gang associate. Plaintiff also argues that the regulations on which defendants relied to validate him are vague.

### B. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

    In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

    In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

### C. Undisputed Facts

On July 14, 2007, a cell search was conducted by defendant Villasenor of the cell of a known and validated associate of the Mexican Mafia ("EME"), Victor Salazar, during which a birthday card to Salazar was found that had been signed by plaintiff. The card was signed by three other validated EME gang members. Defendant Villasenor determined that this card should be considered as one source document for purposes of gang validation of plaintiff.

On June 28, 2007, a search of plaintiff's cell and personal property by defendant Villasenor discovered a white piece of paper with the name "John Arce" and CDCR number "C-20746" written in blue ink. John Arce was identified as a validated EME associate housed in PBSP. Defendant Villasenor determined that this paper should be considered as another source document for purposes of gang validation of plaintiff.

On July 14, 2007, a search of plaintiff's cell and personal property by defendant Villasenor discovered a piece of paper stating "NS Colton" and "Loonie" written on it. "Loonie" is plaintiff's nickname and "NS Colton" is short for "North Side Colton," plaintiff's former street gang. Written on both sides of the name Loonie was a Mactactlomei symbol, which is the ancient Meso-American numeral thirteen. This symbol consists of two parallel lines with three unconnected dots above. According to defendant Villasenor, the thirteenth letter of the alphabet is the letter "M" which is used by the EME attempting to conceal their association. The symbol was also found written on the inside of plaintiff's address book under plaintiff's name. Accordingly to defendant Villasenor, the CDCR recognizes this symbol as consistent with EME prison gang association. Defendant Villasenor determined that these documents containing this symbol should be considered as source documentation for purposes of gang validation of

plaintiff.

During the July 14, 2007 cell search, defendant Villasenor also discovered the name of a known and validated EME member in plaintiff's address book (Ted Rios). Defendant Villasenor determined that this document should be considered as source documentation for purposes of gang validation of plaintiff.

On October 19, 2007, plaintiff was placed in administrative segregation ("ad seg") based on a confidential memo dated December 19, 2006, identifying him as a gang member, and based upon the above-referenced source documents. On October 19, 2007, plaintiff was interviewed and provided with a validation interview notification and disclosure form.

The Second Level Decision denying plaintiff's appeal challenging the gang associate validation describes the December 19, 2006 confidential memo as stating as follows:

> Confidential memorandum dated December 19, 2006, authored by C/O Wallace. Specifically several EME mini-notes were discovered pertaining to EME prison gang activities. The notes identified several <u>validated</u> and <u>non validated</u> EME associates. The notes indicate that TREGLIA volunteered to participate in EME prison gang activities. Specifically Treglia writes that he is going to be transferred to Corcoran and he would be willing to transport any EME written material or drugs to "Old Man N," identified as CABRAL, Robert (P-97292) aka "Nego" from NS Colton, a validated EME member. Both TREGLIA and CABRAL are from the same geographical gang neighborhood as well as the same prison gang association.

Dkt. No. 30-2, at 59 of 67.

D. <u>Analysis</u>

In the amended complaint, plaintiff argues that the decision to validate him as a gang associate violated his right to due process because it was not supported by sufficient evidence. In the amended complaint, plaintiff appears to challenge all of the factors relied on by defendants to validate him as a gang associate. However, in his summary judgment motion plaintiff specifically challenges only two of the factors relied on by defendants to validate him as a gang associate: his name on the birthday card and the gang symbol written on paper found in his cell.

The process constitutionally due to an inmate placed in segregation depends on whether the placement is disciplinary or administrative. Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986). In Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Ninth Circuit determined that California's policy of placing suspected gang members in segregation is an administrative decision, undertaken to preserve order in the prison. When an inmate is placed in segregation for administrative purposes, due process requires only the following procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.... [D]ue process [ ] does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

Toussaint, 801 F.2d at 1100-01 (footnote omitted).

Prisoners are entitled to the minimal procedural protections of adequate notice and an opportunity to be heard. Bruce, 351 F.3d at 1287. In addition to these minimal protections, there must be "some evidence" supporting the decision to place a prisoner in segregated housing. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

The "some evidence" standard sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d 1080, with respect to the minimal limitations). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." Id., at 1288; Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board" (citing Hill, 472 U.S. at 455-56 (emphases in original)).

In applying this standard the court is not required to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is

whether there is any evidence in the record that could support the conclusion.'" Bruce, 351 F.3d at 1287 (citing Hill, 472 U.S. at 455-56).

Plaintiff first argues that the fact that he signed the birthday card was not evidence of his gang affiliation because he did not know that the other inmates who signed the birthday card were EME members or associates. Plaintiff also argues that defendants violated his right to due process by failing to give him notice that these inmates were EME members or associates. In support of these arguments, plaintiff contends that the sign on the cell door shared by two of the inmates who signed the card identified them as "S/H," i.e. Southern Hispanics, rather than "H/EME," i.e. Mexican Mafia gang members. Plaintiff's declaration attached to his summary judgment motion as exhibit 2 states that he did not know that these inmates were EME members because their door tag read "S/H."

Plaintiff also contends that the sign on the cell door of the other inmate who signed the card indicated that he was "S/H" as opposed to "H/EME." A copy of an "Administrative Segregation Unit/Security Housing Unit Double Cell Review" form dated October 11, 2006, is attached to plaintiff's motion as exhibit 1. This form designates both plaintiff and inmate Nunez, his cellmate who signed the birthday card, as S/H. In his verified opposition, plaintiff also states that he did not know that the inmate for whom the birthday card was prepared was a validated EME member.

Due process does not require that plaintiff be given notice regarding which inmates are gang members. Accordingly, plaintiff is not entitled to summary judgment as to this particular claim. While plaintiff claims that he did not know that the other inmates were EME members, the undersigned cannot find that defendants improperly relied on the "card" evidence in validating plaintiff as a gang associate. Plaintiff and three other known EME members signed a birthday card addressed to another EME member. Based on the other evidence of plaintiff's gang affiliation, plaintiff's signature on the birthday card had sufficient indicia of reliability of his gang association.

Plaintiff next argues that defendants did not give him proper notice that they considered the Meso-American symbol to be gang related. Plaintiff contends that he did not know that this symbol signified association with the EME. Plaintiff contends that he has had this symbol tattooed on the back of his neck since he was twelve years old. He argues that this symbol is used by Hispanic street gangs from southern California to identify themselves as southerners. Plaintiff argues that this symbol is a "fad" that can be found on sweaters, clothing and other items. Plaintiff also argues that the regulation relied on by defendants to find that the symbol was evidence of gang affiliation was unconstitutionally vague.

Due process did not require that plaintiff be given notice that the symbol signified association with the EME. Accordingly, plaintiff is not entitled to summary judgment as to this particular claim.

In their opposition, defendants do not specifically address plaintiff's claim that he did not know the Meso-American symbol for thirteen signified gang membership. The fact that plaintiff has had this symbol tattooed on his neck allegedly since he was twelve years old would support his claim that he believed the symbol signified that he was southern. However, the other evidence of plaintiff's gang involvement created sufficient indicia of reliability for this evidence.

As discussed above, a single piece of evidence may be sufficient to meet the "some evidence" requirement if that evidence has "sufficient indicia of reliability." Bruce, 315 F.3d at 1288. In the pending motion, plaintiff does not challenge the other evidence relied on by defendants to validate his gang association. For that reason, were the undersigned to find the two factors challenged in the pending motion were not supported by some evidence, plaintiff's gang validation would still stand based on the unchallenged factors.

For the reasons discussed above, the undersigned recommends that plaintiff's motion for partial summary judgment be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to assign a district judge to this action;

2. Plaintiff's May 24, 2010 motion to augment the record (Dkt. No. 44) is granted;

3. Plaintiff's August 2, 2010 motion to amend (Dkt. No. 50) is granted;

4. Plaintiff's September 13, 2010 motion to amend (Dkt. No. 54) is denied; and

IT IS HEREBY RECOMMENDED that plaintiff's motion for partial summary judgment (Dkt. No. 30) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 24, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

tre352.sj